UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CLIFF LANG and BETSY LANG, individually
and on behalf of all others similarly situated,

                              Plaintiffs,
    v.                                        **DECISION AND ORDER**
                                                              12-CV-266S

FIRST AMERICAN TITLE INSURANCE
COMPANY, as successor in interest to First
American Title Company of New York,

                              Defendants.

## I. INTRODUCTION

Plaintiffs Cliff and Betsy Lang commenced this putative class action on behalf of themselves and all others similarly situated seeking damages and declaratory relief in connection with Defendant First American Title Insurance Company's alleged collection of excessive premiums. Presently before this Court are Defendant's motion to stay the action and compel arbitration, and its purported 'renewal' of that motion. This Court has considered the parties' submissions and finds oral argument unnecessary. For the reasons that follow, Defendant's motions are denied.

## II. BACKGROUND

Plaintiffs are New York state residents who obtained a mortgage loan on their home in October 2004. (Am. Compl. ¶ 5, Docket No. 16.) As required by the lender, Plaintiffs purchased a lender title policy in the amount of the mortgage on their home. (Id.) In January 2007, Plaintiff refinanced the prior mortgage loan. (Id. ¶ 6.) They obtained a new

1

mortgage loan from Fremont Investment & Loan ("Fremont") in the amount of $155,760. (Id.) Plaintiffs were required by that lender to pay for another loan title policy issued by Defendant insuring Fremont. (Id. ¶¶ 6, 13.) The premium for the policy, $749.01, was paid by Plaintiffs to Defendant and its agent at closing. (Id. ¶ 7.) A copy of this lender title policy was provided to Fremont, but not to Plaintiffs. (Id.; Def's Reply Mem of Law at 6 n 2, Docket No. 24.) Instead, Plaintiffs were presented with an itemized statement of costs associated with the closing, including the premium charged by Defendant. (Id. ¶ 28.)

In New York, title insurers must file their policy rates with the State Superintendent of Insurance for approval. See N.Y. Ins. Law § 2305 (b)(7). Once filed and approved, title insurers may not deviate from the rates or "make any policy or contract involving a violation thereof." See N.Y. Ins. Law § 2314. Defendant's filed rate schedule provides that Defendant will discount the charge for a refinance title insurance policy by 50% if the policy is issued no more than ten years after the mortgagor obtained his or her original loan and the new mortgage is for less than $475,000. (Am. Compl. ¶¶ 16-18, 27-29.)

Plaintiffs allege that they were entitled to, but did not receive, the discounted rate because their prior mortgage was less than ten years old and their new refinanced mortgage was for less than $475,000. (Am. Compl. ¶¶ 9-11.) Plaintiffs therefore allege that Defendant unlawfully collected an unearned premium of $327.01. (Id. ¶ 11.) They initially commenced a putative class action in this Court in January 2008, alleging that Defendant's collection of excessive premiums violated the Real Estate Settlement Procedures Act ("RESPA") as well as New York state law. (Lang v. First Am. Title Ins. Co. of N.Y., 816 F. Supp. 2d 214, 215 (W.D.N.Y. 2011); see 12 U.S.C. § 2607(b).) In a September 2011 Decision and Order, this Court dismissed Plaintiffs' RESPA claim with prejudice, and

2

declined to assert supplemental jurisdiction over Plaintiffs' remaining state law claims. (Lang, 816 F.Supp.2d at 221.) Those claims were therefore dismissed without prejudice. (Id.)

Plaintiffs then commenced a putative class action in New York State Supreme Court, Niagara County, in March 2012. (Compl., Docket No. 1-1.) In this complaint, Plaintiffs asserted causes of action for (1) money had and received; (2) unjust enrichment; (3) violation of New York's General Business Law § 349; and (4) breach of implied contract. (Id.) Defendant removed the matter to this Court, asserting that federal jurisdiction was properly based on the diversity of citizenship between Defendant and the putative class members and an amount in controversy in excess of $5,000,000. (Notice of Removal, Docket No. 1; see 28 U.S.C. § 1332 (d).) Following removal, Defendant moved to stay the action and compel arbitration.[1] (Docket No. 7.)

Prior to responding to Defendant's motion, Plaintiffs filed an Amended Complaint as of right, in which they again asserted claims for money had and received, unjust enrichment, and violation of NY GBL § 349, but abandoned the breach of implied contract claim. (Am. Compl., Docket No. 16.) They then filed a Memorandum of Law in opposition to Defendant's motion. (Docket No. 21 with Exs. A-B.) Defendant moved to "renew" its prior motion to stay the action and compel arbitration, (Docket No. 22), and also filed a reply Memorandum of Law to Plaintiff's opposition.[2] (Docket No. 24.)

---

[1] In support of its motion, Defendant filed a supporting Memorandum of Law (Docket No. 8), the Declaration of Joseph D. DeSalvo with Ex. A (Docket No. 9), and the Attorney Declaration of Elizabeth Teutenberg Ferrick, Esq., with Exs. A-B (Docket No. 10).

[2] Included in Defendant's reply is the Attorney Declaration of Luke G. Maher, Esq., with Ex. A (Docket No. 24).

3

## III. DISCUSSION

"In the context of motions to compel arbitration brought under the Federal Arbitration Act ('FAA'), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citing Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3d Cir.1980)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Id. (citing 9 U.S.C. § 4). "Whether a dispute is arbitrable comprises two questions: '(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.'" Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (quoting National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996)). "While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., __ U.S. __, 130 S.Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) (internal citations and quotation marks omitted); Schnabel v. Trilegiant Corp., __ F.3d __, 2012 WL 3871366, *6 (2d Cir. 2012) (existence of agreement to arbitrate is question of state law). Specifically, a party may not be compelled under the FAA to submit to arbitration "unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen S.A., 130 S. Ct at 1775; Ross v. American Exp. Co., 547 F.3d 137, 143 (2d Cir. 2008).

Here, the lender title policy between Defendant and Fremont contains the following arbitration provision:

4

> 13. ARBITRATION. (DOES NOT APPLY IN STATE OF KANSAS)
>
> Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matter may include, but are not limited to, **any controversy or claim between the Company and the insured arising out of or relating to this policy**, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. **All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured.** All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. . . .

(Decl. of Joseph D. DeSalvo Ex. A, Docket No. 9 (emphasis altered).) Initially, the parties do not dispute that Plaintiffs are neither signatories to nor insured parties under the lender title policy contract.[3]

Nonetheless, there are five theories under which a nonsignatory to an arbitration agreement may still be bound by it: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2d Cir. 2001); see Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995). Here, Defendant relies on only the theory of equitable estoppel, which provides that a non-party to an agreement may be

---

[3]That Plaintiffs do not fall into the category of 'insured' is supported by the plain language of the lender title policy itself. "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." Vigilant Ins. Co. v. Bear Stearns Co., Inc., 10 N.Y.3d 170, 177, 884 N.E.2d 1044, 1047 (N.Y. 2008) (internal quotation marks omitted). Here, the lender title policy defines an "insured" as "the insured named in Schedule A," which, despite references to Plaintiffs by name elsewhere, lists only Fremont Investment & Loan, its successors and assigns as insured. Id. (Conditions and Stipulations ¶ 1 (a), Sch. A.) Plaintiffs are also not included in the policies' additional categories of insured, such as governmental agencies acting as an insurer or guarantor under an insurance contract. Id. (Conditions and Stipulations ¶ 1 (a)(ii).) Thus, this is not a "controversy or claim between the Company and the *insured*" within the meaning of the plain language of the lender title policy.

bound by an arbitration clause contained therein where he or she knowingly accepts the benefits of that agreement. MAG Portfolio Consultant, 268 F.3d at 61.

In order to find that Plaintiffs are equitably estopped from avoiding the arbitration clause, however, "[t]he benefits [reaped by Plaintiffs] must be direct – which is to say, flowing directly from the agreement." MAG Portfolio Consultant, 268 F.3d at 61. For example, in American Bureau of Shipping v. Tencara Shipyard S.P.A., the owners of a racing yacht were estopped from avoiding an arbitration agreement in a contract between the shipyard that built the yacht at the behest of the owners and a classification society. 170 F.3d 349, 353 (2d Cir. 1999). The Second Circuit found there that the owners, although not parties to the contract, had received a direct benefit from that agreement because it resulted in "significantly lower insurance rates" on the yacht and the ability to sail under the French flag. Id.

"In contrast, 'the benefit derived from an agreement is indirect,' and is therefore insufficient to support estoppel, 'where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself.' " Life Techs. Corp. v. AB Sciex Pte. Ltd., 803 F. Supp. 2d 270, 274 (S.D.N.Y. 2011) (quoting Republic of Ecuador v. ChevronTexaco Corp., 499 F. Supp. 2d 452, 458 (S.D.N.Y. 2007)); see also MAG Portfolio Consultant, 268 F.3d at 61-62. Such was the case in Thomson-CSF, where a competitor was able to squeeze a rival out of a market by purchasing the company with which the rival had an exclusive dealing agreement. Thomson-CSF, 64 F.3d at 778–79; Life Techs. Corp., 803 F. Supp. 2d at 275-76. Because the competitor never sought to purchase equipment from the rival pursuant to the exclusive dealing agreement containing the arbitration clause or enforce the exclusivity provision

6

found therein, the Second Circuit determined that the competitor did not receive a direct benefit from the agreement itself. Thomson-CSF, 64 F.3d at 779. Instead, the competitor was only indirectly benefitted by the fact that the existence of the agreement effectively shut the rival out of the market. Id.

Here, Defendant argues that Plaintiffs benefitted from the lender title policy because they were able to secure a refinanced mortgage on their home. (Def's Mem of Law at 6, Docket No. 8.) In light of the above case law, this Court disagrees that the refinanced mortgage was a *direct* benefit of the lender title policy. Although paying the premium for the lender title policy agreement "was crucial to the benefit [Plaintiffs] gained [by obtaining a refinanced mortgage], the agreement was not the direct source of the benefit." MAG Portfolio Consultant, 268 F.3d at 62 (citing Thomson-CSF, 64 F.3d at 778-79). The provisions of the lender title policy did not have any beneficial effect on the terms of Plaintiffs' mortgage. Cf. Tencara Shipyard S.P.A., 170 F.3d at 353. Instead, Plaintiffs' benefit comes from the mere fact of the contractual relationship between the lender and Defendant, the existence of which was a condition of Fremont's refinancing Plaintiffs' mortgage. The instant case is therefore more akin to Thomson-CSF. 64 F.3d at 779.

Defendant contends, however, that Plaintiffs' claims nonetheless arise from the lender title policy because the rates at issue, although not appearing in the policy, are incorporated into it. (Def's Reply Mem of Law at 4-5, Docket No. 24.) Defendant relies on, *inter alia*, Chesner v. Stewart Title Guar. Co., for the proposition that "rate filings become, in effect, part of the contract between the parties, such that a violation of the rate filing (e.g., levying a charge in excess of the filed rate) would constitute a breach of contract." No. 06-CV-467, 2009 WL 585823, *5 (N.D. Ohio Jan. 9, 2009); see Gluckman v. Am.

7

Airlines, Inc., 844 F. Supp. 151, 160 (S.D.N.Y. 1994) (filed "tariff constitutes the incorporated terms of the contract between passenger and airline"). Defendant therefore argues that Plaintiff, by basing their claims on the rates incorporated into the lender title policy, is attempting to exploit that agreement, and should not be permitted to avoid the arbitration provision in the same document. (Def's Reply Mem of Law at 4, Docket No. 24.)

Even assuming the filed rates are incorporated into the lender title policy, Plaintiffs could not base a claim on its provisions because, as conceded by Defendant, they are not parties to that agreement. Waynes v. BJ's Wholesale Club, Inc., 97 A.D.3d 659, 661, 948 N.Y.S.2d 641, 643 (N.Y.A.D. 2d Dep't 2012) (breach of contract action cannot be brought by non-party or non-beneficiary to the contract). Plaintiffs are also not third-party beneficiaries of the lender title policy, such that they would be permitted to bring a breach of contract action under New York law. Id. To establish third-party beneficiary rights under a contract, a plaintiff must show "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [the plaintiff's] benefit and (3) that the benefit to [the plaintiff] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [him or her] if the benefit is lost." Logan-Baldwin v. L.S.M. Gen. Contractors, Inc., 94 A.D.3d 1466, 1468, 942 N.Y.S.2d 718, 720 (N.Y.A.D. 4th Dep't 2012)(internal quotation marks omitted); Levine v. Harriton & Furrer, LLP, 92 A.D.3d 1176, 1177, 940 N.Y.S.2d 334, 337 (N.Y.A.D. 3d Dep't 2012). As concluded above, Plaintiffs do not directly benefit from the terms of the lender title policy itself, rather their benefit – the ability to obtain a refinanced mortgage – is incidental to that agreement. See Thomson-CSF, S.A.. 64 F.3d at 779; see also Levine, 92 A.D.3d at 1177 (law firms' breach of contract claim based on retainer agreement

between plaintiff and expert witness dismissed because prospective legal fees based upon an award in the claimant's favor were incidental to that agreement); Mendelsohn v. Ferber, 73 A.D.3d 1139, 1140, 903 N.Y.S.2d 427, 428 (N.Y.A.D. 2 Dept. 2010) (plaintiff could not recover unearned retainer fees under breach of contract theory because she was neither a party to, nor a third-party beneficiary of, the retainer agreements between the defendants and the subject clients).

Accordingly, because Plaintiffs could not bring a breach of contract claim based on the provisions of the lender title policy, it cannot be said that they are now exploiting a term of that agreement. Indeed, unlike cases where estoppel has been found based on a non-signatory's reliance on an agreement containing an arbitration clause, see Am. Bureau of Shipping v. Societe Jet Flint, S.A, No. 97-CV-3570, 1998 WL 273083, *2 (S.D.N.Y. May 27, 1998), *aff'd in part, rev'd in part* Tencara Shipyard, S.P.A., 170 F.3d at 351 (yacht owners' negligence claim against classification society, with whom they had no contract, was based on obligation to oversee design and construction found in society's agreement with shipyard); Am. Bankers Ins. Group, Inc. v. Long, 453 F.3d 623, 627-28 (4th Cir. 2006) (estoppel appropriate where complaint is based on an alleged breach of the obligations and duties in the agreement), here, Plaintiffs' first and second causes of action would be subject to dismissal[4] if the lender title policy was found to govern the relationship between Plaintiffs and Defendant. One Step Up, Ltd. v. Webster Business Credit Corp., 87 A.D.3d

---

[4]Defendant makes much of Plaintiffs' decision to abandon the breach of contract claim after the issue of arbitration was raised. Plaintiffs, however, never alleged a breach of the lender title policy agreement, but instead alleged a separate *implied-in-fact* contract. Like the implied-in-law contractual remedies of unjust enrichment and money had and received, "a contract cannot be implied in fact ... where there is an express contract covering the subject-matter involved." Segal v. Cooper, 95 A.D.3d 545, 545, 944 N.Y.S.2d 65, 66 (N.Y.A.D. 1st Dep't 2012) (quoting Miller v. Schloss, 218 N.Y. 400, 406–407, 113 N.E. 337 (1916)).

1, 14, 925 N.Y.S.2d 61, 70 (N.Y.A.D. 1 Dept. 2011) (claims for unjust enrichment and money had and received are not viable where express contracts govern the same subject matter). Nor do Plaintiffs need to rely on any provision of the lender title policy to establish a claim of deceptive business practices under General Business Law § 349, which requires a showing that "the challenged act or practice was a consumer oriented act or practice that is misleading in a material way, and caused injury to the plaintiff." Vescon Const., Inc. v. Gerelli Ins. Agency, Inc., 97 A.D.3d 658, 659, 948 N.Y.S.2d 636, 638 (N.Y.A.D. 2 Dept. 2012). Finally, relevant to all of Plaintiff's claims is the fact that Defendant's obligation to refrain from charging fees in excess of the filed rates stems from state law, regardless of any other contractual obligation. N.Y. Ins. Law § 2314.

The Court therefore finds that there is no contractual basis for concluding that Plaintiffs agreed to arbitrate their current dispute with Defendants. Stolt-Nielsen S.A., 130 S. Ct at 1775. This decision is unaffected by Defendant's reliance on In re California Title Insurance Anti-Trust Litigation, where a California district court found that the plaintiffs could not avoid arbitration "on the basis that the arbitration provisions appear in the loan documents with the lender, not the plaintiff owners." No. 08-CV-1341, 2011 WL 2566449, *4 (N.D. Cal. June 27, 2011). The district court's finding that the arbitration clause was broad enough to cover claims independent of "the loan agreements," presumably referencing lender title policies, is unsupported by any discussion of what facts led to the conclusion that the plaintiffs were contractually bound by that arbitration clause in the first place. Id.; cf. Ross, 547 F.3d at 143. In fact, it is unclear whether the district court even made such a determination. Accordingly, this Court does not find the case persuasive.

## III. CONCLUSION

Because there is no contractual basis for determining that Plaintiffs agreed to arbitrate the current dispute with Defendants, the motion to stay the action and compel arbitration (Docket No. 7) is denied in its entirety. Further, there appears no basis nor need for Defendant's "renewal" motion, which merely calls attention to the arguments in its initial Memorandum of Law and Reply Memorandum of Law. That motion is also denied.

## V. ORDERS

IT HEREBY IS ORDERED that Defendants' motion to stay the action and compel arbitration (Docket No. 7) and its purported motion for renewal (Docket No. 22) are DENIED.

SO ORDERED.

Dated: October 21, 2012
       Buffalo, New York

                                               /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                    Chief Judge
                                          United States District Judge